Charles B. SHEWMAKE and John R. Matthews, Jr., Complainants,

v.

MONTGOMERY LODGE NO. 596, BENEVOLENT AND PROTECTIVE ORDER OF ELKS OF the UNITED STATES of America, a corporation, et al., Respondents.

Civ. A. No. 2643–N.

United States District Court
M. D. Alabama, N. D.

Aug. 28, 1968.

John R. Matthews, Jr., Ball & Ball, Montgomery, Ala., for complainants.

Ben Hardeman, U. S. Atty., Ralph O. Howard, Asst. U. S. Atty., McDonald Gallion, Atty. Gen., and James R. Payne, Asst. Atty. Gen., Jesse M. Williams, Jr., John Huddleston, Warren S. Reese, Jr., for respondents.

## FINDINGS OF FACT AND OPINION

PITTMAN, District Judge.

The plaintiffs filed a bill of interpleader in the Circuit Court of Montgomery County, Alabama, and paid $32,840.10 into the court with the bill, which represented a surplus balance from a mortgage foreclosure sale. The plaintiffs sought to have the court determine the party or parties having prior claim to these funds and release and discharge the plaintiffs from further liability with respect to the funds. It was also requested that the plaintiffs' attorney, John B. Matthews, be allowed reasonable attorney's fees for foreclosure of the mortgage and for bringing of the bill of interpleader, and foreclosure expenses be paid out of these surplus funds.

This cause was removed to the District Court on motion of the defendant, the United States of America.

On November 8, 1967, the plaintiff Shewmake purchased a mortgage from the Montgomery Lodge No. 596 of the Benevolent and Protective Order of Elks to Mutual Savings Life Insurance Company, dated July 10, 1963, which was recorded on the same date in the Probate Court of Montgomery County, Alabama. The mortgage conveyed two parcels of real estate in Montgomery, Alabama, referred to in the complaint as the By-Pass property and the Bibb Street property.

On December 18, 1967, Shewmake, through the plaintiff's attorney Matthews, as auctioneer, foreclosed said property. No bids were received when the two parcels were first offered separately. The two parcels were then offered as a whole and were purchased by Donald J. Harter, Inc. for $246,000.00 cash. Matthews, after payment of the balance due on the mortgage, but before payment of his reasonable attorney's fee and expenses for foreclosure, had a surplus of $32,840.10. Being aware of numerous conflicting claims to this surplus, the plaintiff filed the fill of interpleader in the Circuit Court of Montgomery County, Alabama, and paid the surplus fund into court.

Conflicting claims to the surplus funds are as follows:

(a) Bond holders whose indebtedness is secured under a trust indenture to the Union Bank and Trust Company dated October 21, 1963, and recorded in the Probate Office of Montgomery County, Alabama, on the same date and is an incumbrance on the By-Pass property only.

(b) A judgment in favor of Hoyt Hardin against the Elks Lodge for $107.50 and costs of $4.65, recorded in the Probate Office of Montgomery County, Alabama, on June 21, 1965, which constitutes an incumbrance against the By-Pass and Bibb Street property.

(c) A judgment in favor of Builders Supply, Inc. against the Elks Lodge for $71.26 and costs of $4.65, recorded on May 10, 1966, and constitutes an incumbrance against the By-Pass property and the Bibb Street property.

(d) The United States of America, on June 10, 1966, assessed taxes in the amount of $214,451.96 for taxes owed by the Elks Lodge and recorded in the Probate Office of Montgomery County, Alabama, September 13, 1966.

(e) State of Alabama on October 20, 1967, made an assessment for taxes against the Elks Lodge in the amount of $306.53 and recorded the assessment October 25, 1967.

The issues to be determined and their determination are as follows:

(1) *Issue:* Did the mortgage to Mutual Savings Life Insurance Company dated July 10, 1963, and recorded in the Probate Office of Montgomery County, Alabama, on July 10, 1963, and assigned to complainant Shewmake, prime the tax lien filed by the United States of America dated June 10, 1966, and recorded in said Probate Office on September 13, 1966?

*Determination:* The United States concedes the mortgage to Mutual Savings, etc. did prime the tax lien filed by the United States.

(2) *Issue:* Did the trust indenture for the benefit of bond holders to the Union Bank and Trust Company, dated October 21, 1963, and recorded in said Probate Office on October 21, 1963, prime the tax lien referred to in Paragraph (1) above?

*Determination:* It is conceded by the United States that the trust indenture primed the tax lien of the United States, however, the lien of the trust indenture is an incumbrance against only the By-Pass property.

■ The United States agrees that its tax lien is entitled to be claimed against only such portion of the surplus proceeds as the pro rata value of the Bibb Street property bears to the total value of both parcels at the foreclosure sale less the amount of prior incumbrances at the time of the foreclosure. That is to say, the court will determine the value of the By-Pass property and of the Bibb Street property, then apportion the pro rata share of the surplus proceeds to the respective parcels. The lien of the United States is only claimed against the surplus funds prorated to the Bibb Street property and is subsequent in priority to the judgment creditors, Hoyt Hardin and Builders Supply, Inc., as hereinabove set out and the court finds the lien is subsequent in priority to the attorney's fees and costs hereinafter awarded.

■ Upon due consideration of the evidence offered by all parties as to the value of the two parcels, and after a view by the court of the two parcels and comparables referred to by the witnesses, the court fixes the pro rata value of the Bibb Street property at the time of the mortgage foreclosure sale at $60,000.00 and the pro rata value of the By-Pass property at the same time at $186,000.00. After the deduction of the attorney's fees hereinafter allowed, $5,250.00, and court costs, the remaining surplus will be prorated to each parcel on the basis that the respective parcel values set out above bear to the total sale price of $246,000.00.

(3) *Issue:* If the said trust indenture referred to in Paragraph (2) above does prime the tax lien referred to in Paragraph (2) above, what division, if any, should be made of the surplus funds paid on said mortgage foreclosure between the bond holders secured by said trust indenture and the other claimants, including judgment creditors, the United States government, and the State of Alabama?

*Determination:* It is conceded by the United States that all of the judgments set out in the complaint prime its tax lien.

■ The claimed lien of the State of Alabama arose subsequent to, and was recorded subsequent to, the Federal tax lien and there is no evidence before the court which would prime the State of Alabama's claimed lien as against the other named lien claimants. Inasmuch as the final disposition and determination of liens as to the By-Pass property is being remanded to the State Court for final disposition, this ruling is limited to the Bibb Street property.

(4) *Issue:* What attorney's fees, if any, is John R. Matthews, Jr., entitled to for services in the foreclosure of said mortgage and in the filing and prosecuting of this bill of interpleader?

■ *Determination:* John R. Matthews, Jr. is entitled to $2,750.00 attorney's fee in the foreclosure of the mortgage, and to $2,500.00 in the filing and prosecuting of this bill of interpleader, totaling $5,250.00, which is to be deducted from the surplus paid into court prior to its pro rata division to the By-Pass property and Bibb Street property.

(5) *Issue:* What attorneys' fees, if any, are the attorneys for the bond holders entitled to for their services in asserting claims to said fund on behalf of said bond holders?

*Determination:* No evidence was taken and no adjudication is made on this issue inasmuch as the court is remanding to the Circuit Court of Montgomery County all claims and issues other than as herein disposed of the By-Pass prop-

erty together with the pro rata division of the surplus funds as hereinabove set out.

(6) *Issue:* Should the defendant Donald J. Harter remain a party and, if so, etc.?

*Determination:* The attorneys for Harter have requested that the relief he sought be struck and he has been dismissed without objection, therefore this question is moot.

### ORDER

It is hereby ordered, adjudged, and decreed as follows:

1. John R. Matthews, Jr., attorney, is awarded $2,750.00 for the foreclosure of the mortgage and $2,500.00 for the filing and prosecuting of this bill of interpleader, including the remand and subsequent disposition of the bill of interpleader in the Circuit Court of Montgomery County, totaling $5,250.00. This attorney fee and court costs herein are to be deducted from surplus funds, to wit, $32,840.10, paid into court prior to the funds pro rata division to the By-Pass property and Bibb Street property.

2. The Clerk is to apportion the balance of the Surplus funds to the By-Pass property and Bibb Street property on the basis which the pro rata value of the Bibb Street property at $60,000.00 bears to the total value, $246,000, of the two parcels which the properties brought at the foreclosure sale.

3. On the remainder of the above pro rata share of the surplus funds retained by the Clerk for the Bibb Street property:

(a) The judgment creditors, to wit, Hoyt Hardin has a prior lien as to the United States and the State of Alabama, in the amount of $107.50 and costs of $4.65, and Builders Supply, Inc. has a prior lien as to the United States and the State of Alabama, in the amount of $71.26 and costs of $4.65.

(b) The United States of America has a lien subsequent to the above creditors against the pro rata division assigned to the Bibb Street property in the amount of $214,451.96.

4. The State of Alabama and the bond holders under the trust indenture to the Union Bank and Trust Company have no lien against the Bibb Street property.

5. The bond holders under the trust indenture to the Union Bank and Trust Company have a lien against the By-Pass property, but the disposition of this lien, the disposition of the claimed lien of the State of Alabama against the By-Pass property, the disposition of the claimed attorneys' fees for the bond holders, and other matters relating to the By-Pass property are hereby remanded to the Circuit Court of Montgomery County, State of Alabama, for final disposition.

6. On remand to the Circuit Court of Montgomery County, State of Alabama, for the disposition of the remaining issues concerning the By-Pass property, the Clerk is ordered to pay to the Register of the Circuit Court of Montgomery County, Alabama, the pro rata share of the remaining surplus funds apportioned herein to the By-Pass property.